No. 89-359

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RIO LIBERTY,

Plaintiff and Appellant,

-vs-

AARON JONES,

Defendant and Respondent.

'89 NOV 15 AM 10 43
FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James A. Manley; Manley Law Offices, Polson, Montana

For Respondent:

Daniel Decker, Confederated Salish & Kootenai Tribes,
Pablo, Montana

Submitted on Briefs: Sept. 27, 1989

Decided: November 15, 1989

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of dismissal of the Twentieth Judicial District, Lake County. The District Court dismissed the case on the ground that it did not have subject matter jurisdiction over the controversy. We affirm.

The sole issue on appeal is:

Whether the state courts of Montana have subject matter jurisdiction over a civil dispute brought by an Indian alleging tortious conduct by another Indian arising on the Flathead Indian Reservation when both parties are members of the Confederated Salish and Kootenai Tribe.

The facts of this case are simple. The parties are enrolled members of the Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation. Both parties' residence, business and place of employment are situated within the exterior boundaries of the Reservation.

Rio Liberty (Liberty), a self-employed truck driver, filed a complaint in state court against Aaron Jones (Jones), who is a manager of a business known as the Flathead Post and Pole Yard. This business and the land that it sits on are owned by the tribes.

In his complaint, he alleged that Jones unlawfully terminated a contract between Liberty and the Flathead Post and Pole Yard. Liberty maintains that the contract was terminated due to his failure as a member of the local school board, to hire Jones' wife as a teacher at a local elementary school. He bases this complaint upon an alleged conversation with Jones, which occurred at the Flathead Post and Pole Yard. It is alleged that, during this conversation, Jones stated that the reason for the termination of the contract was that Liberty had not hired his wife for the teaching position.

Jones filed a motion to dismiss for lack of subject matter jurisdiction. The trial court found that it did not have jurisdiction over a dispute between two Indians that arose on the Reservation, and the motion to dismiss was granted.

In the past, the Indians gave up much of their land through the signing of treaties with the American government. These treaties were not, however, a grant of power to the tribes from the government. It has always been recognized that the treaties represented an exchange of limited aspects of tribal sovereignty for the benefits and protection of the United States of America. Worcester v. Georgia (1832), 31 U.S. 515, 8 L.E. 483. Consequently, because the tribes have been recognized as "distinct independent political communities," their authority to manage the internal affairs of their populace has never been fully relinquished. Worcester, 31 U.S. at 557. The federal government has always precluded state interference with internal tribal affairs when such interference would unduly infringe upon tribal sovereignty. Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. Normally, a state can only exercise jurisdiction over internal tribal relations when Congress has given its express assent.

Liberty maintains that authority for the State's jurisdiction in this case, arises from the fact that the Flathead Indian Reservation is subject to the provisions of Public Law 280. See 18 U.S.C. § 1161-62, 25 U.S.C. §§ 1321-1322, 28 U.S.C. § 1360 (1986). Passed in 1953, Public Law 280 allowed the states under certain circumstances to extend their civil and criminal adjudicatory powers into Indian country.

3

In 1965, the State of Montana and the Confederated Salish and Kootenai Tribes entered into a voluntary agreement, pursuant to Public Law 280, that extended State criminal and enumerated areas of civil jurisdiction onto the reservation. This agreement extended the laws and jurisdiction of the State onto the Flathead Reservation in nine areas:

a) Compulsory School Attendance.

b) Public Welfare

c) Domestic Relations (exception adoptions)

d) Medical Health, Insanity, Care of the Infirm, Aged and Afflicted.

e) Juvenile Delinquency and Youth Rehabilitation.

f) Adoption Proceedings (With consent of the Tribal Court)

g) Abandoned, Dependent, Neglected, Orphaned or Abused Children

h) Operation of Motor Vehicles upon the Public Streets, Alleys, Roads and Highways.

i) All Criminal Laws of the State of Montana; and all Criminal Ordinances of Cities and Towns within the Flathead Indian Reservation.

Tribal Ordinance 40A (1965).

Liberty maintains that the issues here can be litigated in state court under section b of the tribal ordinance. This section allows the State to extend its jurisdiction and laws onto the reservation in the area of "public welfare." Liberty argues that the facts of this case present a controversy which affects the welfare of the public, because it involves an act of extortion upon a public official. Such an act necessarily will affect the general happiness,

4

well-being and welfare of the citizens of Montana. Therefore, it is argued that the State has jurisdictional authority under section b, over this tort action in order to protect these values.

We disagree with this argument. As stated by the District Court, it is clear that the term "public welfare" only applies to practical issues of economic assistance to the needy. Contrary to Liberty's argument, it was not intended to include "lofty constitutional principles involving the welfare of the public." In the absence of an express directive giving the State jurisdiction over disputes between tribal members, which arise on the reservation, Montana cannot extend its authority over such controversies. There is no such directive. Therefore, the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices