JUSTICE NELSON
dissenting.
*84 ¶23 I dissent. While I generally agree with the Court’s holding, but not its reasoning, that the District Court’s contract analysis is in error, I strongly disagree with the Court’s conclusion at ¶ 21 that the District Court properly decided Paragraph 11 of the Bradley/Crow Tribe contract “was sufficient to waive jurisdictional objections.” Indeed, because the contract was not a sufficient waiver of tribal immunity, I would affirm the District Court for reaching the correct result, albeit for the wrong reason.
¶24 There are two fundamental issues of jurisdiction present in this case, tribal sovereign immunity from suit and tribal court jurisdiction versus state court jurisdiction. Because proper subject matter jurisdiction can be raised at any time and can be raised sua sponte by this Court, these jurisdictional issues should be raised and addressed by this Court. Thompson v. Crow Tribe of Indians, 1998 MT 161, ¶ 12, 289 Mont. 358, ¶ 12, 962 P.2d 577, ¶ 12 (holding tribe immune from suit). By virtue of its decision reversing the District Court on a contract analysis alone, the majority opinion fails to properly address either of these issues.
A. Tribal Sovereign Immunity
¶25 First, I do not believe that the possibility of a valid contract compels reversal of the District Court. Even assuming a valid, binding agreement was formed between Bradley and the Crow Tribe (Tribe), I do not agree with the District Court’s conclusion that the Tribe unequivocally waived its immunity from suit by virtue of Paragraph II of that same contract.
¶26 Further, although Bradley asserts in his reply brief that the Tribe has not raised the issue of a proper interpretation of Paragraph 11 of the contract by disputing the trial court’s conclusion, as mentioned above, this Court has already determined that tribal sovereign immunity is a jurisdictional question which may be raised at any time and may be raised by this Court. Further, this Court’s rule regarding preservation of arguments for appeal is based on whether the trial court was given an opportunity to consider the issue. In this case, the trial court twice directly considered whether Paragraph 11 of the contract between Bradley and the Tribe constituted waiver of tribal immunity. See Order Denying Motion to Dismiss, p.4-5 (Feb. 8, 2001), and Order and Memorandum Setting Aside Judgment and Dismissing Complaint for Lack ofSubject Matter Jurisdiction, p.7 (June 10,2002). Therefore, this Court is free to and should address the issue that the contract here does not constitute waiver. To that issue I now turn.
¶27 As the Court correctly notes, the rule is well established that *85 tribes retain sovereign immunity from suit unless that immunity is unequivocally waived by Congress or by a tribe. C & L Enters. v. Citizen Band Potawatomi Indian Tribe (2001), 532 U.S. 411, 418, 121 S.Ct. 1589, 1594, 149 L.Ed.2d 623. In other words, unlike the United States or the State of Montana, no broad based waiver of tribal immunity has ever been enacted. Compare Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; Administrative Procedure Act, 5 U.S.C. §§ 701-706; Art. II, Sec. 18, Mont. Const. Therefore, any case presenting the issue of tribal immunity starts with the presumption that the tribe has immunity. From that presumption, a court must address whether that immunity has been waived.
¶28 In the case of relinquishment of immunity by contract, the waiver must be clear. C & L Enters., 532 U.S. at 418, 121 S.Ct. at 1594. Most cases addressing waiver of sovereign immunity by contract also involve either an interpretation of applicable federal law, an interpretation of tribal constitution, code, or charter, or address the agent authority of the signatory to the contract. See, e.g., Wippert v. Blackfeet Tribe (1993), 260 Mont. 93, 104, 859 P.2d 420, 426-27 (addressing immunity in the context of the tribe’s corporate charter). However, some cases also address the issue of whether standard contract language that does not mention sovereign immunity nonetheless constitutes waiver.
¶29 Recently, the United States Supreme Court addressed a conflict among courts regarding waiver based on contract language. C & L Enters., 532 U.S. at 418, 121 S.Ct. at 1594. In C & L Enters., the Court addressed a standard form construction contract for installation of a foam roof on a building. The Court held that an arbitration clause coupled with a choice of law clause constituted clear waiver because the tribe in that case agreed to adhere to specific dispute resolution procedures according to the American Arbitration Association rules. The Court also pointed out that the tribe agreed to judicial enforcement of an arbitration judgment by those rules. Further, the Court specifically noted that its decision was based in part on the fact that the tribe in that case prepared and tendered the contract. Therefore, because federal law governs the issue of tribal immunity from suit, C &L Enters. establishes baseline contract provisions which unequivocally constitute waiver of sovereign immunity by a tribe.
¶30 In this case, Paragraph 11 of the parties’ contract reads:
11. MONTANA LAW AND VENUE
The parties agree that any action at law, suit in equity, or judicial proceeding for the enforcement of this AGREEMENT or any provision thereof shall be instituted only in the courts of the *86 STATE OF MONTANA, and it is mutually agreed that this AGREEMENT shall be governed by the laws of the STATE OF MONTANA, both as to interpretation and performance. [Emphasis in original.]
This case then presents the question of whether something less, something substantially less, than the arbitration language in C & L Enters, constitutes waiver.
¶31 The District Court concluded that C & L Enters, requires that Paragraph 11 must be considered an unequivocal waiver. I conclude that the District Court erred in its interpretation of C & L Enters, as a matter of law because the court simply did not address the differences between the contract in C & L Enters, and the contract in this case. This point is crucial because of the presumption that sovereign immunity is not waived.
¶32 After comparing the contract at issue with the provisions at issue in. C & L Enters., I conclude that the Bradley/Crow Tribe contract cannot be considered a clear waiver of tribal sovereign immunity. First, unlike the contract in C & L Enters., the contract at issue here does not contain an arbitration provision; it only has a forum and choice of law clause. Therefore, unlike C & L Enters., the Tribe in this case did not agree to adhere to specific dispute resolution procedures. Further, unlike C & L Enters., the Tribe in this case did not agree to procedures for enforcement of judgment.
¶33 In addition, Bradley drafted the contract at issue here, not the Tribe. It is a standard form contract intended to apply to any of Bradley’s clients, as is evident from its title: “Standard Agreement for Consulting Services.” Accordingly, our interpretation of any ambiguity in the contract is to be construed against Bradley, not against the Tribe. Therefore, unlike C & L Enters., the fact that Bradley drafted and tendered the contract rather than the Tribe removes any inference that the Tribe intended to waive immunity by offering the contract.
¶34 Finally, the District Court cited a number of cases in support of its conclusion that Paragraph 11 constituted clear waiver. However, all the cases cited by the court in which a tribe was a party involved a contract which included an arbitration clause, similar to the situation in C & L Enters. Further, although the court cited cases that involved contracts with choice of law provisions, none of these cases dealt with tribes or tribal sovereign immunity. Rather, these cases each deal with foreign sovereigns and countries under the provisions of the Foreign Sovereign Immunities Act, which does not apply to tribes. Further, after reviewing the cases involving Indian tribes, it appears that a *87 choice of law provision is simply insufficient to waive tribal immunity. See, e.g., Danka Funding Co. v. Sky City Casino (N.J. Super. Ct. Law Div. 1999), 747 A.2d 837, 843 (holding forum and choice of law provision insufficient to waive tribal immunity and stating: “The court has not found any authority nor has any been cited by counsel to support a waiver of immunity based on a tribal member signing a contract containing a forum selection clause ... [unlike] a waiver of tribal immunity where an arbitration clause was contained in a disputed contract.”); American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374, 1376 (8th Cir. 1985) (promissory note with choice of law provision and provision for attorney fees held insufficient to constitute waiver of tribal immunity).
¶35 To hold that waiver is “clear” from a contract such as the one here is to substantially eliminate the concept of tribal sovereign immunity by giving effect to any standard form contract with a choice of law provision. I cannot agree that such a common standard form provision in a contract that is not prepared by a tribe should override sovereign immunity. Therefore, I would hold that the District Court erred in concluding that the contract at issue here constitutes a waiver of tribal sovereign immunity.
B. Tribal Court Jurisdiction Versus State Court Jurisdiction
¶36 Next, I am disturbed that a case such as this is even being litigated in the state court system.
¶37 Tribal court versus federal court versus state court jurisdiction is one of the most challenging Indian law issues facing the courts today. However, one thing is clear: tribal courts have jurisdiction over tribal members conducting business on tribal land with other tribal members. See CONFERENCE OF WESTERN ATTORNEYS GENERAL, American Indian Law Deskbook, 135-37, n.82,90 (1993) (discussing tribal, federal, and state jurisdiction). See also Kennerly v. District Court of Ninth Judicial Dist. (1971), 400 U.S. 423, 429, 91 S.Ct. 480, 483, 27 L.Ed.2d 507, 511 (noting that, absent an act by Congress, a tribe has exclusive jurisdiction over debt collection action arising out of a transaction on the reservation between a non-Indian creditor and an Indian defendant); National Farmers Union Ins. Cos. v. Crow Tribe of Indians (1985), 471 U.S. 845, 855-56, 105 S.Ct. 2447, 2453-54, 85 L.Ed.2d 818 (In civil matters “the existence and extent of a tribal court’s jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant *88 statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.”).
¶38 Further, we have previously adhered to jurisdictional rules that require this Court to refrain from obstructing tribal court jurisdiction when “the exercise of state jurisdiction would interfere with reservation self-government.” General Constructors, Inc. v. Chewculator, Inc., 2001 MT 54, ¶¶ 23-25, 304 Mont. 319, ¶¶ 23-25, 21 P.3d 604, ¶¶ 23-25. In addition, we have stated: “Absent the clearest evidence of the Tribes’ intent to consent to the assertion of authority by state courts onto their sovereign land, the Tribes retain their exclusive jurisdiction.” Balyeat Law, P.C. v. Pettit, 1998 MT 252, ¶ 25, 291 Mont. 196, ¶ 25, 967 P.2d 398, ¶ 25. See also Agri West v. Koyama Farms, Inc. (1997), 281 Mont. 167, 173, 933 P.2d 808, 812 (Montana applies the doctrine of abstention, as a matter of comity).
¶39 In this case, as already discussed above, the contract itself does not constitute clear evidence of the Tribe’s consent to the assertion of authority by Montana’s courts. Further, this case falls squarely within tribal court jurisdiction: Bradley is a tribal member, the contract is with the Tribe, and the contract involves business on tribal land with the Tribe itself. In addition, the dispute involves a contract with the Tribe itself regarding a grant from the United States government to facilitate energy development by the Tribe. See Affidavit of Stephen E. Bradley (“Sometime in 1985, I proposed to the Crow Tribe that the Crow Tribe ought to construct a power plant which could utilize the abundant coal supply owned by the Crow Tribe on the Crow Reservation.”).
¶40 I cannot imagine a more straightforward issue of tribal self government. Therefore, again, I would affirm the District Court and allow resolution of this matter to be handled where resolution is most appropriate: in the Crow Tribal Court.
CHIEF JUSTICE GRAY and JUSTICE REGNIER join in the foregoing dissent.