*208 JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶ 1 The Petitioner, Flat Center Farms, Inc., appealed the Respondent Department of Revenue’s imposition of the Corporation License Tax to the State Tax Appeal Board. The State Tax Appeal Board upheld the Department of Revenue’s assessment. Flat Center appealed to the District Court for the Fifteenth Judicial District in Roosevelt County. The District Court reversed the decision of the State Tax Appeal Board and held that the Corporation License Tax did not apply to Flat Center. The Department of Revenue now appeals from the order of the District Court. We affirm the order of the District Court.
¶2 The sole issue presented on appeal is whether the District Court erred when it concluded that the Montana Corporation License Tax may not be imposed on an Indian-owned corporation which does business entirely within the exterior boundaries of the Fort Peck Reservation.
FACTUAL BACKGROUND
¶3 The relevant facts to this dispute were agreed upon by the parties. Flat Center Farms, Inc. was incorporated pursuant to the laws of Montana on December 3,1993, and chartered by the Fort Peck Tribes as a Tribal Corporation on October 7,1996. Flat Center’s sole business activity is farming and the farming operation is located entirely within the exterior boundaries of the Fort Peck Reservation.
¶4 Earn Murray is an enrolled member of the Fort Peck Tribes. He and his wife, Denise Murray, each own 200 shares of Flat Center stock. There is no non-Indian ownership of the corporation. Denise Murray is an enrolled member of the Turtle Mountain Chippewa, a tribe that has allotted lands within the Fort Peck Reservation and whose members receive social services offered by the Fort Peck Reservation. ¶5 Flat Center leases all the land it farms. Some of this land is owned in fee simple by individual Indians; the remainder is held in trust by the federal government for Mr. Murray, the Tribes, or individual Indians. All of the leased lands are within the Fort Peck Reservation boundaries.
¶6 On July 12, 1996, the Department of Revenue assessed Flat Center for taxes owed pursuant to the corporation license tax for the tax year ending October 31,1994. The corporation license tax provides that every corporation engaged in business in the State of Montana pay an annual license fee “for the privilege of carrying on business in this state.” § 15-31-101(3), MCA. The tax is assessed based on a percentage a corporation’s total net income during the tax year. Flat *209 Center appealed imposition of the tax to the Division Administrator on August 8, 1996. After the Director of the Department of Revenue upheld the Division Administrator’s assessment of the corporation license tax, Flat Center petitioned to the State Tax Appeal Board (STAB). STAB also upheld the Department’s assessment.
¶7 Flat Center appealed STAB’s decision to the District Court for the Fifteenth Judicial District in Roosevelt County. The District Court reversed STAB and the Department and granted Flat Center’s motion for summary judgment. The District Court held that 1) the beneficiaries of the income were ultimately Indian persons; 2) the situs of the activity generating the income was wholly within the reservation; and 3) the assets generating the income were Indian trust lands. The District Court further held that the corporate license tax impermissibly taxed lands held in trust for the Tribes and individual Indians. The Department now appeals from the order of the District Court.
STANDARD OF REVIEW
¶8 Our standard of review of appeals from summary judgment is de novo. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We apply the same criteria which is applied by the district court pursuant to Rule 56(c), M.R.Civ.P. Spinler v. Allen, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Hadford v. Credit Bureau of Havre, Inc., 1998 MT 179, ¶ 14, 289 Mont. 529, ¶ 14, 962 P.2d 1198, ¶ 14. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. Hadford, ¶ 14.
DISCUSSION
¶9 Did the District Court err when it concluded that the corporation license tax may not be imposed on an Indian-owned corporation which does business entirely within the Fort Peck Reservation?
¶10 The heart of the State’s argument is that there is a distinction between individual Indians and corporations. The State contends that because corporations are created by state law, they are not the legal equivalent of a tribal member and therefore Flat Center is not an “Indian” for purposes of Montana’s tax code. Consequently, the income against which the license tax is assessed is not the individual income *210 of an Indian, but rather corporate income subject to Montana’s state tax laws like any other corporation doing business in Montana.
¶11 The longstanding rule is that a state is without power to tax reservation lands and Indian income generated from on-reservation activities absent the express authorization of Congress. Mescalero Apache Tribe v. Jones (1973), 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114. While the State concedes that it lacks the authority to tax the on-reservation activities of enrolled tribal members or to directly tax reservation lands, it contends that its authority to tax non-Indians on the reservation should be presumed. According to the State, unless Flat Center falls under an exemption to that presumptive authority, the corporate license tax should apply.
¶12 However, the State’s position reverses the presumption established by federal Indian law. Indian tribes have long been recognized as distinct, independent political communities qualified to exercise powers of self-government by virtue of their original tribal sovereignty. FELIX S. COHEN’S HANDBOOK OF FEDERAL INDIAN LAW, 232 (1986). Chief Justice John Marshall wrote that Indian tribes are “domestic dependent nations” whose relationship with the federal government resembles that of a ward to a guardian. Cherokee Nation v. Georgia (1831), 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25. As a consequence of this special relationship between co-equal sovereigns, tribal powers of self-government are limited only by federal statutes, the terms of treaties with the federal government, and by restraints implicit in the nature of the relationship itself-in all other respects the tribes remain independent and self-governing communities. COHEN’S HANDBOOK, at 235.
¶13 The exercise of state jurisdiction over activities occurring entirely on Indian lands is an infringement on inherent tribal authority and is contrary to principles of self-government and tribal sovereignty. Williams v Lee (1959), 358 U.S. 217, 220-23, 79 S.Ct. 269, 271-72, 3 L.Ed.2d 251. In the area of state taxation, where “Chief Justice Marshall’s observation that ‘the power to tax involves the power to destroy’ has counseled a more categorical approach,” the exercise of state jurisdiction is even more circumscribed. County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation (1992), 502 U.S. 251, 258, 112 S.Ct. 683, 688, 116 L.Ed.2d 687.
¶14 That is not to say that state taxation is precluded in every instance. There is ample federal authority to the contrary. See, e.g., Washington v. Confederated Tribes of Colville Reservation (1980), 447 U.S. 134, 156, 100 S. Ct. 2069, 2083, 65 L.Ed.2d 10; Moe v. *211 Confederated Salish and Kootenai Tribes of Flathead Reservation (1976), 425 U.S. 463, 483, 96 S.Ct. 1634, 1646, 48 L.Ed.2d 96. The point here is that the State should not be presumed to wield the sword of on-reservation tax authority absent an express Congressional provision. While we have not previously addressed the precise issue in this case, this Court has repeatedly recognized the need to promote tribal self-determination by deferring to tribal authority on matters of essential importance to tribes and their members. See, e.g., In re Marriage of Skillen, 1998 MT 43, ¶ 41, 287 Mont. 399, ¶ 41, 956 P.2d 1, ¶ 41 (recognizing tribal sovereignty and the right of self-government include authority to control the internal relations of tribal members); Balyeat Law, P.C. v. Pettit, 1998 MT 252, ¶ 36, 291 Mont. 196, ¶ 36, 967 P.2d 398, ¶ 36 (holding that Montana courts lack subject matter jurisdiction over debt collection action brought by non-Indian creditor whose rights arose on reservation); In re Adoption of Riffle (1995), 273 Mont. 237, 242, 902 P.2d 542, 545 (holding that the tribe is the ultimate authority on eligibility for tribal membership). Furthermore, we have considered whether tribal membership is critical to a determination of whether the State can tax income earned by Indians on tribal land. See LaRoque v. State (1978), 178 Mont. 315, 583 P.2d 1059 (holding that tribal membership was not determinative).
¶15 With these principles in mind, and based on the parties’ stipulated facts, we conclude that Flat Center is not subject to the corporate license tax because Flat Center is a tribally chartered corporation owned and operated by Indians, conducts business entirely on the Fort Peck Reservation, and does not “carry on business in this state.”
¶16 The State contends that, as a nonmember with a corporate identity distinct from its stockholders, Flat Center does not enjoy the exemptions-the tax shield-from state taxation available to tribes and tribal members. An antecedent question, however, is whether there is statutory authority for taxing Flat Center’s activities on the reservation in the first place. Based on the plain language of the corporate license tax, we conclude that there is not. The corporate license tax is an annual fee assessed “for the privilege of carrying on business in this state.” Section 15-31-101(3), MCA. Flat Center does not carry on business in Montana. As the stipulated facts indicate, Flat Center does all its business in Indian country. Flat Center’s activities occur solely on Indian land owned in fee or held in trust. All of those lands are within the exterior boundaries of the Fort Peck Reservation. In reality, the value the State wishes to tax is generated entirely in a *212 sovereign state. Therefore, Flat Center’s income is not earned in Montana.
¶17 The State relies heavily on Baraga Products, Inc. v. Commissioner of Revenue (W.D. Mich. 1997), 971 F. Supp. 294, aff'd (6th Cir. 1998), 156 F.3d 1228, a case which it contends is directly on point. In Baraga Products, the court opined that “because a corporation is a legal fiction owing its existence to state law, [plaintiff] is ... not the legal equivalent of a member of the Tribe.” Baraga Products, 971 F. Supp. at 296.
¶18 However, the published opinion in Baraga Products leaves important questions unanswered-the precise language of the Michigan business tax and, contrary to the suggestion in the dissenting opinion, whether significant commercial activity took place outside the Reservation. Furthermore, we have previously held that tribal membership is not essential to a determination of whether income earned on the Reservation is taxable. See LaRoque, 178 Mont. at 324, 583 P.2d at 1064.
¶19 In fact, we have in the past given greater weight to the situs of taxable income than the status of the income earner. That was the point of our holding in LaRoque. In LaRoque, this Court recognized the general rule that individual income earned by an Indian person and derived wholly from reservation sources is exempt from state income tax. See McClanahan v. State Tax Comm’n of Arizona (1973), 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129. We then went a step further and held that the income earned on the reservation by non-member Indians is exempt from state taxation. We reasoned that state jurisdiction was limited in “areas set aside by treaty for the exclusive use and control of Indians.” LaRoque, 178 Mont. at 323, 583 P.2d at 1063. Our determination of whether income could be subjected to state taxation included an analysis of the situs of the activity as well as the status of the Indian as a member or non-member of the tribe. LaRoque, 178 Mont. at 324-25, 583 P.2d at 1064. We held:
We therefore, conclude that situs of the activity is the primary factor in determining whether state taxation jurisdiction exists, not the status of the individual as enrolled or non-enrolled. We read the phrase “reservation Indian” in McClanahan to mean Indians residing on the reservation, and not just Indians who are enrolled members of the tribe. We find support for this conclusion in Fox v. Bureau of Revenue (1975), 87 N.M. 261, 531 P.2d 1234, cert. den. 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341. In Fox, the Court held a Comanche Indian who worked and resided on the *213 Navajo reservation in New Mexico and who was not an enrolled member of the Navajo tribe, was nevertheless exempt from state income taxation. Fox, 531 P.2d at 1235. The Court indicated the important factors were the coalescence of situs (reservation) and status (Indian). Fox at 1234. The Court could find no cases where the status of the Indian in question as an enrolled tribal member was crucial; in fact, in the cases decided, tribal affiliation was unimportant as situs on a reservation and status as an Indian coalesced.
¶20 The State suggests that subsequent Supreme Court decisions have undercut the logic of LaRoque and that non-member Indians are the equivalent of non-Indians for purposes of state taxation. We disagree with this interpretation because we find the cases cited by the State to be materially different from the facts and issue now before us and conclude that the tribal status of the individual or corporation to be taxed may be relevant, but it is by no means dispositive. However, and most importantly, the statutory language pursuant to which the State asserts taxing authority limits that authority based on the situs of the activity from which income is earned. Flat Center, whether it is technically a tribal “member” or not, conducts all its commercial activity and generates all the value that the State now targets for taxation on the Fort Peck Reservation.
¶21 Moreover, analysis based on the totality of the circumstances as done in LaRoque would lead to the same result. Both stockholders of Flat Center are enrolled members of tribes served by the Fort Peck Reservation. Kim Murray is an enrolled member of the Fort Peck Tribes. His wife Denise is an enrolled member of the Turtle Mountain Chippewa, a tribe that has allotted lands within the Fort Peck Reservation and whose members receive social services, such as Indian Health Services, offered by the Fort Peck Tribes to enrolled members. The land from which the corporation derives its income is either owned by Indians or held in trust for Indians. Finally, although subsequent to the tax years in question, the Tribes have recognized Flat Center as a tribally chartered corporation. These factors in combination illustrate the strong nexus between Flat Center’s activities and the interest of the Tribes in regulating and promoting commercial activity on its Reservation. Put another way, “the coalescence of situs (reservation) and status (Indian)” which guides traditional analysis is present. See LaRoque, 178 Mont. at 324, 583 P.2d at 1064.
¶22 For these reasons, the District Court was correct when it concluded that the Montana Corporation License Tax may not be *214 imposed on a tribally chartered corporation which does business entirely within the Fort Peck Reservation. Accordingly, the order of the District Court is affirmed.
JUSTICES NELSON, REGNIER, LEAPHART and COTTER concur.