No. 01-888

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 121

DARREL KOKE, LARRY SALOIS, DIANN
GRANTHAM, ED LAVENGER, JOHN SINCLAIR,
ALVINA ALLEN and CAROLINE FLUERY,

            Petitioners and Appellants,

            v.

LITTLE SHELL TRIBE OF CHIPPEWA INDIANS OF
MONTANA, INC., MARY TOBE WHITAKER, as
Registered Agent, LARRY OLSON, TIM ZIMMERMAN,
MARY TOBE WHITAKER, HENRY ANDERSON,
ROGER SALOIS, DARYL OLSON, MARLENE ELLISON,
HELEN VOGEL, LEONA KIENENBERGER, GORDON
AZURE, DAVID PARENTEAU and PAT MAKI,
and EACH OF THE ABOVE AS INDIVIDUALS,

            Respondents and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade, Cause No. CDV-01-132,
                The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

            For Appellants:

                Robert E. LaFountain (argued), Attorney at Law, Billings, Montana

            For Respondents:

                Majel M. Russell, Sam S. Painter (argued), Elk River Law Office, P.L.L.P.,
                Billings, Montana

                                    Argued and Submitted:  January 21, 2003
                                                Decided:  April 29, 2003

Filed:

_____
                        Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Appellants Darrel Koke, Larry Salois, Diann Grantham, Ed Lavenger, John Sinclair, Alvina Allen, and Caroline Fleury are members of the Little Shell Tribe and were candidates for positions in the November 18, 2000, Little Shell election. Respondents Mary Tobe Whitaker, Henry Anderson, Roger Salois, Daryl Olson, Marlene Ellison, Helen Vogel, Leona Kienenberger, Gordon Azure, David Parenteau and Pat Maki were incumbent candidates for the positions. Respondent Little Shell Tribe of Chippewa Indians of Montana, Inc., is a Montana corporation. Appellants filed this action seeking tort damages and injunctive relief. The dispute centers around a tribal election which the appellants claim they won. This appeal arises from an Order entered by the District Court on April 17, 2001, dismissing the action for lack of subject matter jurisdiction. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in dismissing the action on the basis of tribal sovereignty?

¶4 2. Did the District Court err in converting the motion to dismiss into a motion for summary judgment?

BACKGROUND

¶5 In its April 17, 2001, Order, the District Court provided a brief history of the Little Shell Tribe:

> What is presently called the Little Shell Tribe traces its history substantially to the Pembina Band of Chippewa Indians, whose Chief Little Shell (Ase-anse), signed the Treaty of the Old Crossing of the Red Lake River, Minnesota

2

with the Red Lake and Pembina Band of Chippewa. Later some members were on the Turtle Mountain Chippewa Reservation in North Dakota. Other Little Shell ancestors were located elsewhere in North Dakota and Saskatchewan. A group who were disenrolled from the Turtle Mountain Chippewa Reservation in North Dakota in the 1890's were led into Montana at that time by Chief Thomas Little Shell (Ayabrwaywetung). Others migrated to Montana between the 1860's and 1930's. See generally Dept. Of Interior, Proposed Finding for Federal Acknowledgment of the Little Shell Tribe of Chippewa Indians of Montana, July 21, 2000.

¶6 The District Court also recognized that the approximately 4,500 descendants of the Little Shell are spread across the United States, although they are concentrated in North Central Montana. In 1977, they adopted a constitution and by-laws; two years later, in 1979, they filed Articles of Incorporation of Little Shell Tribe Cultural Advantage Corporation with the State of Montana. According to testimony, the Articles of Incorporation were filed on the advice of an attorney who believed the filing would give them some state recognition as a tribe. The name of the corporation was later changed to the Little Shell Tribe of Chippewa Indians of Montana. Since the 1930's, the tribe has been seeking recognition by the federal government under the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et. seq.*

STANDARD OF REVIEW

¶7 A district court's determination that it lacks jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Hilands Golf Club v. Ashmore* (1996), 277 Mont. 324, 328, 922 P.2d 469, 472. Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule

3

56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

### ISSUE ONE

¶8 Did the District Court err in dismissing the action on the basis of tribal sovereignty?

¶9 "From the earliest years of the Republic the Indian tribes have been recognized as 'distinct, independent, political communities,' and, as such, qualified to exercise powers of self-government, not by virtue of any delegation of powers from the Federal Government, but rather by reason of their original tribal sovereignty." Felix Cohen, *Handbook of Federal Indian Law*, 122 (Five Rings Press 1988) (1942) (quoting *Worcester v. Georgia* (1832), 31 U.S. 515, 559).

¶10 In the instant case, the District Court determined that it lacked jurisdiction to consider this matter because for all relevant purposes the Little Shell Tribe is a "tribe" entitled to sovereignty. The District Court concluded that since the tribe is sovereign, Montana's state courts do not have jurisdiction to adjudicate the underlying issues in this case.

¶11 Appellants argue on appeal that the District Court erred in concluding that the Little Shell is a tribe, and consequently they are not entitled to sovereignty. If they are not a tribe entitled to sovereignty, then the District Court erred when it ruled that it did not possess jurisdiction over the underlying dispute.

¶12 The Little Shell Tribe has been pursuing recognition by the federal government under the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et. seq.*, since the 1930's. Although

4

the Little Shell Tribe has not yet received federal recognition, tribes may still be recognized as such under common law. The United States Supreme Court established the criteria for common law recognition of a tribe in *Montoya v. United States* (1901), 180 U.S. 261, 266, 21 S.Ct. 358, 359, 45 L.Ed. 521: first, members must be of the same or a similar race; second, they must be united in a community; third, they must exist under one leadership or government; and fourth, they must inhabit a particular, though sometimes ill-defined territory. The District Court concluded that the Little Shell Tribe meets the requirements of *Montoya* to be recognized as a "tribe." We agree with the District Court's analysis and summarize it as follows.

¶13     The history of the Little Shell Tribe, as set forth herein, demonstrates that the first *Montoya* element, that members be of the same or a similar race, is satisfied. Furthermore, this Court hereby takes judicial notice of the Department of Interior's Proposed Finding on Federal Recognition ("Proposed Finding"). The Proposed Finding states that members of the tribe derive substantially from a Chippewa Band that was led by three hereditary chiefs known as the Little Shell, and ancestors of a combination of Metis "mixed bloods" group.

¶14     Satisfaction of the second *Montoya* element, that the groups be united in a community, is also established herein. The Proposed Finding states that tribal ancestors have been described by contemporary observers as socially and culturally distinct from European settlers and other tribes. Tribal members settled along the Hi-Line and slowly migrated into towns in the outskirts of Great Falls, Helena and Lewistown. The Proposed Finding states

5

further that tribal members remained a cohesive group and intermarried at significant rates, resulting in a clear sense of community.

¶15 The Proposed Finding also persuades us that the third *Montoya* element, that the people be under one leadership or government, has been satisfied. The Proposed Finding states that "since the mid-1950's the Petitioners' members and ancestors have been part of the common political process of a single organization." Furthermore, the Little Shell Tribe has operated under a constitution since at least 1977. Thus, the third requirement for state recognition as a tribe has been met.

¶16 Finally, the fourth *Montoya* element, that the group inhabit an area of reasonable definition, has also been met. Tribal members live primarily in North Central Montana, and in the Great Falls, Helena, and Lewistown areas. According to the Proposed Finding, the tribe is pursuing land acquisition in order to establish a land base for its members. Furthermore, tribes are not required to occupy a reservation to either receive common law or federal recognition. Thus, the fourth *Montoya* element has also been satisfied. We agree with the District Court that the Little Shell satisfies each element of the *Montoya* test and therefore is a tribe entitled to sovereignty.

¶17 Notwithstanding, Appellants maintain that we should not recognize tribal sovereignty because the tribe incorporated under the laws of the State of Montana. By incorporating, they argue, the tribe has chosen to forego any claim of sovereignty they may have had. We agree, however, with the District Court's conclusion that the corporation is a separate entity not intended to be the alter ego of the tribe. Testimony in the District Court pointed out that

6

the corporation was formed on advice of counsel in order to aid in achieving federal recognition. The tribe's constitution and by-laws were drafted two years before formation of the corporation. Although the officers of the tribe and the officers of the corporation are the same, witnesses testified that members understood that they were voting for officers of the tribe, rather than the corporation. As the District Court concluded in its Order, "it cannot be concluded that the tribal entity has been in any way subsumed in the corporate entity."

¶18    Appellants also contend that the tribal officials are liable for their actions in their individual capacities. Indian tribes and their officials enjoy sovereign immunity from suit unless expressly limited by Congress. *Santa Clara Pueblo v. Martinez* (1978), 436 U.S. 49, 98 S.Ct 1670, 56 L.Ed.2d 106. Respondents point out that the District Court correctly determined that the tribal officials acted in their official capacities and are therefore protected under the doctrine of sovereign immunity. We agree with the respondents. Since the tribal officials here were acting in their official capacities, suit against them is likewise barred. *See Bottomly v. Passamaquoddy Tribe*, (1st Cir. 1979) 599 F.2d 1061, 1067.

¶19    Our conclusion that Montana District Court is without jurisdiction is somewhat unsettling, in that it leaves the appellants with no forum to hear their complaint on its merits. However, this Court is unwilling to interfere with the longstanding right of tribal sovereignty to resolve the underlying matter in this case.

ISSUE TWO

¶20    Did the District Court err in converting the motion to dismiss into a motion for summary judgment?

7

¶21 Appellants argue that the District Court improperly treated the motion to dismiss as a motion for summary judgment. They assert that before the District Court could convert the motion from a motion to dismiss to a motion for summary judgment, it was required to give notice to the parties. Appellants allege the lack of notice prejudiced their case by not allowing them reasonable opportunity to present additional information to preclude summary judgment.

¶22 We are not persuaded by Appellants' argument. The District Court entertained arguments from both parties regarding its jurisdiction over the case. Appellants filed briefs with the District Court regarding jurisdictional issues and invited the District Court to reference supporting affidavits. In a brief entitled "Response to Respondents' Second Motion to Dismiss," Appellants wrote:

> The Motion to Dismiss presented by the Respondents [Appellees] is supported by affidavits. The result is that the motion is somewhat in the nature of a motion for summary judgment. Petitioner [Appellants] presented a number of affidavits upon filing the complaint. If there is any requirement of counter-affidavits, then the Court is referred to those affidavits.

The record indicates that the District Court did indeed refer to matters outside the pleadings in considering the jurisdiction issue. Furthermore, the heading on Appellants' own District Court brief reads: "SUMMARY JUDGMENT FOR RESPONDENTS IS INAPPROPRIATE AS TO THE REMAINING SIX ISSUES." Clearly, Appellants had constructive notice that the motion had been converted to a motion for summary judgment.

¶23 In *Bretz v. Ayers* (1988), 232 Mont. 132, 756 P.2d 1115, this Court considered facts similar to those in the instant case. In *Bretz*, the plaintiff attached documents to his brief

opposing a motion to dismiss. The record showed that the District Court reviewed the attached documents, and then converted the motion to dismiss into a motion for summary judgment. We stated that formal notice of conversion in that instance was not required because the plaintiff was "fairly apprised" that the District Court would look beyond the pleadings. *Bretz v. Ayers* (1988), 232 Mont. 132, 136, 756 P.2d 1115, 1118. The situation in *Bretz* is analogous to the facts of the present case; here, as in *Bretz*, the Appellants were "fairly apprised" that the motion would be converted to a motion for summary judgment. See also *Enger v. City of Missoula*, 2001 MT 142, 306 Mont. 28, 29 P.3d 514.

¶24 For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ JIM REGNIER


We Concur:


/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.

¶25 I concur with all that is said in the majority Opinion regarding the sovereign immunity of Indian tribes, whether or not they have been recognized by the federal government; and, I concur with the majority's conclusion that the Little Shell Band meets all the common law criteria for recognition as a tribe. Finally, I concur that to the extent that the Appellants' District Court complaint relates to tribal self-government, the District Court was without jurisdiction to entertain it.

¶26 However, the Appellants' complaint did not name the Little Shell Tribe as a party. The Appellants' complaint was brought against Little Shell Tribe of Chippewa Indians of Montana, Inc., a Montana corporation. While I agree that the District Court was without jurisdiction to entertain the complaint to the extent that it affected the election of tribal officials, I disagree that the District Court was without jurisdiction to consider the complaint as it related to officers of that state corporation. The fact that officers of the corporation happened to be the same as the elected officials of the Tribe is irrelevant. That would simply mean that any judgment entered in district court affects the elected officials in their corporate capacity but not as tribal officials.

¶27 The Appellants' complaint named the corporation and its individual office holders as respondents. For relief, the Appellants sought in part to enjoin the Respondents from 1) destroying election ballots from the November 18, 2000, election; 2) taking further action to seat any person as an officer who did not receive a majority of the votes cast; and 3) from taking further action as officials of the corporation under color of the November 18, 2000,

10

election. The relief sought, while not identified as such, was analogous to that relief provided for in § 35-1-425, MCA, of the Montana Business Corporation Act which provides district courts of this state with jurisdiction to remove any director of a corporation for fraudulent or dishonest conduct or gross abuse of authority when to do so is in the best interests of the corporation.

¶28 Without pre-judging the merits of the Petitioners' complaint, it strikes me as odd that the Respondents could invoke Montana law to create an artificial entity known as a corporation and at any time rely on the protections and advantages that that artificial distinction creates but not be subject to Montana laws which pertain to the regulation and control of corporate activities.

¶29 I do not agree that this case is in any way controlled by our decision in *Flat Center Farms v. State Dept. of Revenue*, 2002 MT 140, 310 Mont. 206, 49 P.3d 578. In that case, the question was whether a Montana corporation whose business was conducted solely within the exterior boundaries of the Fort Peck Reservation, and in which there was no non-Indian ownership, was subject to Montana's corporate license tax. The corporate license tax provides that every corporation "engaged in business" in the state of Montana must pay an annual license fee "for the privilege of carrying on business in this state. . . ." Section 15-31-101(3), MCA. We held that regardless of the corporate identity of Flat Center Farms, Inc., it was not subject to the license tax because its business was conducted entirely on the Fort Peck Reservation and it did not "carry on business in this state." In other words, we held that the Tribe was not subject to the corporate license tax by the very terms of the statute which

the state sought to enforce. We did not hold that Montana corporations can avoid state laws pertaining to the regulation of corporations simply because they have Indian shareholders.

¶30 What the Petitioners sought in this case was to enforce honest and fair elections of the officers of a Montana corporation. Montana's district courts have direct jurisdiction to entertain suits related to the conduct of the office holders in Montana corporations. Therefore, to the extent that the District Court's judgment would have affected the Respondents in their corporate capacity, I conclude that the District Court erred when it dismissed the Petitioners' complaint by summary judgment. To the extent that the majority hold otherwise, I dissent from the majority Opinion. I agree, however, that whatever judgment the District Court had authority to enter in this case would not have affected the Respondents in their capacity as tribal officials.

/S/ TERRY N. TRIEWEILER