No. 05-625

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 304

JAMES and IDA STANLEY,

Plaintiffs and Respondents,

v.

LILLIAN LEMIRE,

Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 2004-564,
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Helge Naber, Naber, P.C., Great Falls, Montana
Steven M. Johnson, Church, Harris, Johnson & Williams, P.C.,
Great Falls, Montana

For Respondent:

Steven T. Fagenstrom, Fagenstrom Law Office, Great Falls, Montana

Submitted on Briefs:  August 3, 2006

Decided:    November 22, 2006

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    James and Ida Stanley ("the Stanleys") filed suit against Lillian Lemire ("Lemire") in the Cascade County Justice Court, seeking possession of the real property on which Lemire was residing plus unpaid "rent," costs of the suit, and attorney fees. Following a jury trial, the Justice Court entered judgment in favor of the Stanleys except on their claim for unpaid "rent," and this judgment was affirmed by the District Court for the Eighth Judicial District, Cascade County, on all issues except the award of fees and costs. Lemire now appeals to this Court.

¶2    The issues on appeal are as follows:

¶3    1. Does this Court have jurisdiction over Lemire's appeal?

¶4    2. Did the District Court err in its determination that the Justice Court retained subject matter jurisdiction over the Stanleys' action against Lemire after she asserted a claim of title to the real property in dispute?

¶5    3. Did the District Court err in affirming the Justice Court's determination that the Stanleys were entitled to an award of attorney fees?

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The "Rental Contract"

¶6    This case arises out of a dispute involving real property located at 1701 13th Avenue South in Great Falls, Montana ("the subject property"). In 1997, Marlene Sorum sold this property to the Stanleys, allegedly with the understanding that Lemire (Ms. Sorum's mother) would be able to live there as long as she wished or for life. However, this understanding was not recorded as part of a deed or contract for sale of the property.

2

¶7 On February 2, 1997, Lemire and the Stanleys entered into a written agreement titled "RENTAL CONTRACT." The agreement provided, in its entirety, as follows:

> The contract entered into below is between Joe and Ida Stanley here after called agent and Lillian Lemire here after called tenant.
>
> In consideration of the use and occupancy of the premises as herein specified we mutually agree.
>
> Address or property 1701-13 Th. [sic] Ave. So. Great Falls MT.
>
> Tenant agrees to rent the subject premises for $100.00 per month payable in advance on the fifth day of each month and every month there after.
>
> Pets will be allowed.
>
> Tenant will be responsible for the utilities.
>
> No more than one person may reside in this house, that person being Lillian Lemire. The tenant shall not transfer her interest in and to this agreement, nor shall the tenant assign or sublet the said premises or any part there of in her absence or otherwise permit others to occupy the premises at any time during this agreement. If tenant violates the provisions of this paragraph the agent may immediately take possession of said premises and in the event of litigation, may sue and evict any person or persons occupying said premises.
>
> It is expressly understood and agreed that the owner of said premises, or said agent will not be liable for any damages or injury of any kind to tenant or her family, or of her or her family's property from what ever cause arising from the occupancy of said premises by tenant and or her family.
>
> It is also understood agent will maintain premises in a condition considered safe for the tenant to occupy.
>
> It is also understood that the term of this agreement is for as long as Lillian Lemire wishes to reside at said premises or until her death. If Lillian wishes to terminate said agreement she is required to give a 30 day notice to vacate.

> In the event Joe or Ida Stanley for whatever reason no longer act as owner or agent of this property this agreement will in its entirety be honored by the new owner or agent.
>
> It is also understood that the tenant may continue to reside at the premises now and in the future as she has resided in the past.

Thereafter, the Stanleys each signed under the heading "Owner/agent" and Lemire signed under the heading "Tenant."

## II. The First Lawsuit

¶8 The parties apparently maintained an amicable relationship for the first few years. Then, in August 2001, the Stanleys began holding Lemire's monthly checks (in other words, they did not timely present the checks for payment). Eventually, they did present the checks for payment; however, the bank did not honor any that were over six months old ($800 worth). The Stanleys then attempted to terminate the Rental Contract and regain possession of the subject property on the ground that Lemire had failed to pay rent. On December 24, 2002, they filed suit against Lemire in the Cascade County Justice Court (Cause No. J202V3186). For clarification, this is *not* the case presently before us on appeal. Rather, as explained below, the appeal before us is from a *second* lawsuit, which the Stanleys filed in the Cascade County Justice Court in 2004.

¶9 In the first lawsuit ("Suit #1"), the Justice Court ruled in favor of the Stanleys, and an appeal was taken to the District Court (Cause No. BDV-03-368) for a trial de novo.[1] Notably, the District Court observed in its Amended Order that

---

[1] As of July 1, 2003, appeals from a justice's court *established as a court of record*—which the Cascade County Justice Court now is—are "confined to review of the record and questions of law." Section 3-10-115(1), MCA (2003), and the Compiler's

4

neither of the parties have come to Court with clean hands. The Plaintiffs admit that they held the checks tendered by the Defendant in an attempt to evict her. In fact, they still want her evicted and are requesting damages. The Defendant, for her part, initially refused to re-issue the dishonored checks deeming it the Plaintiffs' problem since she had tendered the checks as required.

¶10 That said, the court denied the Stanleys' motion for summary judgment and granted Lemire's motion for summary judgment, "find[ing] that a valid rental contract exists between the parties and that the Defendant performed her obligations under the contract." Furthermore,

[t]he Plaintiffs' actions in retaining the proffered rent checks in an attempt to evict the Defendant amounted to a breach of the contract on the part of the Plaintiffs. The Defendant shall be allowed to continue rental of the premises under the terms of the rental contract entered into by the parties.

At the same time, the Court finds that the Defendant shall pay to the Plaintiffs the amount of $800.00, plus interest at the rate of ten percent (10%) per annum from the time she was notified that the bank would not honor her checks, to cover the stale checks that were not honored by the bank.

Neither party appealed this judgment.

### III. The Second Lawsuit

¶11 The Stanleys initiated their second lawsuit against Lemire ("Suit #2," the case now before us) in the Cascade County Justice Court (Cause No. J204V0232) on January 22, 2004. The Complaint for Possession alleged that Lemire had "breached the rental agreement by withholding part of rent monies" totaling, as of that date, $40. The

---

Comments thereto; *see also* § 25-33-301(3), MCA (2003), and the Compiler's Comments thereto. Here, it appears from the record that the Cascade County Justice Court was not yet established as a court of record when Suit #1 was tried and that the District Court, therefore, heard the appeal de novo.

5

Stanleys sought possession of the premises, unpaid rent, costs of the suit, and attorney fees.

¶12 A "voluminous flurry of filings" (as the Justice Court characterized them) ensued. Of those, the following trace the evolution of Lemire's characterization of her interest in the subject property from that of a lessee to that of a life tenant, which is an essential element in resolving Lemire's claim on appeal that the Justice Court lacked jurisdiction over the Stanleys' action.

¶13 First, on January 30, 2004, Lemire filed a motion to dismiss in which she characterized her relationship with the Stanleys as a "landlord-tenant arrangement[]." She asserted that she "has a *lease* of the subject premises for the rest of her natural life" (emphasis added) and that she had reduced her monthly payments by $20 per month "to reflect the reduced value of the leasehold estate" (a reference to damage to a picnic table and a storage shed on the subject property, allegedly caused by Mr. Stanley following the termination of Suit #1). She construed the Stanleys' complaint, which cited no statutory provisions, as stating an action under the law of unlawful detainer (§ 70-27-108, MCA) and then argued that such an action could not be maintained:

> The law of unlawful detainer, however, is not applicable in this case because Ms. Lemire's lease is a residential lease government [sic] by Title 70 Chapter 24 of the Montana Code Annotated [The Montana Residential Landlord and Tenant Act of 1977], and because Ms. Lemire's lease is for life.

¶14 A week later, Lemire filed an Answer, Counterclaims, and Demand for Jury Trial. In conformance with her motion to dismiss, she referred to the parties' contract as a "lease agreement" and to the subject property as "the leased premises" and "her leasehold

6

estate."  She also asserted, in the Introduction section of this document, that she had filed her motion to dismiss "based on this Court's lack of subject matter jurisdiction, and failure to state a claim for unlawful detainer."  Yet, only M. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted) is mentioned in her motion to dismiss, and neither M. R. Civ. P. 12(b)(1) (lack of jurisdiction over the subject matter) nor the words "subject matter jurisdiction" is mentioned at all.  Furthermore, she did not identify (in her answer) the grounds on which she had allegedly challenged the Justice Court's subject matter jurisdiction.

¶15     The Stanleys filed a response to Lemire's motion to dismiss on February 11, 2004.  Among other things, they argued that Lemire "may be trying to mislead the court into believing that Defendant has a life estate"—a prescient interpretation of her argument, given that Lemire had not yet explicitly characterized her interest as such.  The Stanleys continued:  "In truth, Defendant has a written lease, which expires upon the termination of the contract.  As set forth above, Montana Law allows for the termination of a rental agreement when rent is unpaid."

¶16     Next in the progression, Lemire filed her Amended Answer and Counterclaims.  As before, she referred to the subject property as having been "leased to her."  In addition, she used the terms "leasehold estate" and "leased premises" repeatedly, referred to the $100 monthly payments as "rent," and alleged that she "has valid a [sic] rental agreement with [the Stanleys] . . . for the remainder of her natural life."

¶17     On March 31, 2004, Lemire filed a document titled Defendant's Combined Opposition to Plaintiff's Motion to Set Trial Date, and Motion for Pretrial Conference.

7

She asserted that a pretrial conference should be held to address, among other things, "jurisdictional matters related to Ms. Lemire's counterclaims." She continued:

> A Justice of the Peace does not have jurisdiction over claims for malicious prosecution, over actions for damages from the taking, detaining, or injuring *personal* property in excess of $7,000.00, and over claims arising out of a contract in excess of $7,000.00. Mont. Code Ann. § 3-10-301(1). Ms. Lemire's counterclaims rest, in part, on breach of contract, damages for conversion of *personal* property to which she claims title, and malicious prosecution. [Citation to Amended Answer.] Whether or not this Court has jurisdiction to decide on these claims has not yet been determined. [Emphases added.]

¶18 The Justice Court addressed these arguments in its April 3, 2004 Order Setting Jury Trial, in which it also denied Lemire's motion to dismiss. The court determined that the Stanleys' suit was "an action for possession under § 70-24-427" and that the court, therefore, had jurisdiction pursuant to § 3-10-302, MCA, which provides that "[t]he justices' courts have concurrent jurisdiction with the district courts within their respective counties . . . in actions brought under Title 70, chapter 24." The court dismissed without prejudice Lemire's malicious prosecution counterclaim as beyond the court's jurisdiction (*see* § 3-10-301(1)(c), MCA; Montana Justice and City Court Rules of Civil Procedure 7C(1)); however, with respect to Lemire's assertion that her counterclaims exceeded the $7,000 jurisdictional limitation imposed by § 3-10-301, MCA, the court rejected this valuation of her counterclaims as not "hav[ing] any basis in reality." The court observed that "[t]his is a suit over $40 in rent, a homemade wooden picnic table and a shed."

¶19 On April 30, 2004, Lemire filed a Motion to Stay, and Memorandum in Support. Noting that the Justice Court had denied her motion to dismiss, dismissed her malicious prosecution counterclaim, and rejected her "additional jurisdictional concerns," she

8

informed the court that she had refiled her counterclaim for malicious prosecution in the District Court (Cause No. CDV-04-401) and had requested that the District Court "equitably determin[e] her interests in the premises as a life tenant." Accordingly, she asserted, "[t]his matter should be halted, and certified for submission to the Clerk of the District Court." She explained as follows:

> A Justice Court does not have subject matter jurisdiction to determine matters involving title to and possession of real property. Mont. Code Ann. § 25-31-101(1). In such matters, the Justice must suspend all further proceedings in the action and certify the pleadings from his docket to the clerk of the district court of the county. Mont. Code Ann. § 25-31-102(1). In her Answer, Ms. Lemire raises counterclaims for trespass, conversion based on alleged intrusions and destructions of parts of the premises. [Citation to Amended Answer.] To sustain her claims, Ms. Lemire will rely on alternative legal theories, among them that she holds a freehold life estate under the Rental Agreement.

Therefore, based on the court's lack of jurisdiction over questions involving the title to or possession of real property, she concluded, "this Court is precluded from fully adjudicating the matters before it."

¶20 Significantly, this is the first instance in all of the foregoing filings that Lemire *explicitly* raised the possibility that her interest in the subject property was something other than that of a lessee—namely, that "the Rental Agreement was intended to create a *life estate* in [her] favor" (emphasis added). Seizing on this fact, the Stanleys filed a response in which they pointed out that Lemire's answer and amended answer did "not state a defense or a counterclaim for a life estate in the property." Thus, the Stanleys suggested, Lemire had waived the life estate issue by not "properly" raising it earlier in the proceedings. Lemire contested this assertion, arguing in her reply that her

9

pleadings—particularly her references to the subject property in her amended answer as a "leasehold estate"—should be construed liberally to have properly raised a question of title to the subject property.

¶21 On May 10, 2004, the Justice Court denied Lemire's motion to stay. Acknowledging that it does not have jurisdiction to decide a question of title to real property, the court concluded that the issue of whether Lemire had an ownership interest in the subject property was not before the court because she had not raised it in a timely manner:

> [Sections 3-10-301(1)(b) and 25-31-102] require[] the Defendant to raise the issue of a question of title to real property in the verified [sic] answer. Defendant has failed to do so. . . .
>
> Counsel is correct that jurisdiction cannot be granted to the Court where it is precluded by statute. However, this Court *has jurisdiction over the issues that have been **properly and timely raised**.* Plaintiff has initiated an action under the Montana Residential Landlord Tenant Act, which is within the jurisdiction of this Court. Defendant's ANSWER and AMENDED ANSWER raised no issues (at least legitimate issues) that are beyond the jurisdiction of this Court. Defendant NOW wants to raise an issue that involves a question of title to real property that is beyond the jurisdiction of this Court. Unfortunately for Defendant, that ship has sailed. Defendant could have timely raised such an issue, but Defendant did not. Both § 3-10-301[(1)](b) and § 25-31-102 require Defendant to raise this issue in the verified answer. By failing to do so, Defendant has effectively waived this claim.

¶22 Finally, on May 12, 2004, the case went to a jury, which found in favor of the Stanleys on their complaint for possession, but awarded no money damages. The jury also dismissed Lemire's two remaining counterclaims for breach of agreement and breach of the covenant of good faith and fair dealing. (As for her other counterclaims, two were dismissed pretrial and three more were dismissed pursuant to a directed verdict

10

at the close of testimony.) In its judgment, dated May 23, 2004, the Justice Court ordered that "[the Stanleys] [are] granted possession of the premises" and that "[Lemire] shall peacefully vacate the premises . . . by May 30, 2004" (emphasis omitted). Lemire was also required to pay $268.00 for the costs of the jury, and the Stanleys were awarded attorney fees in the amount of $2,594.25 and costs of $60.00.

¶23 Lemire timely appealed to the District Court, which on August 26, 2005, affirmed the judgment of the Justice Court on all issues except the issue of attorney fees and costs. The District Court's reasoning is discussed below in the relevant contexts.

## GENERAL STANDARD OF REVIEW

¶24 The Justice Court was a court of record at the time Suit #2 was tried. Accordingly, on Lemire's appeal from the Justice Court, the District Court functioned effectively as an intermediate appellate court. *See* §§ 3-5-303 and 3-10-115, MCA.

¶25 Acting within its appellate capacity, a district court is not in a position to make findings of fact or discretionary trial court rulings. Rather, the court is "confined to review of the record and questions of law." Section 3-10-115(1), MCA. As does this Court in appeals, the district court reviews any factual findings under the clearly erroneous standard, any discretionary rulings for abuse of discretion, and both legal conclusions and mixed questions of law and fact under the de novo standard. *See State v. Seaman*, 2005 MT 307, ¶ 10, 329 Mont. 429, ¶ 10, 124 P.3d 1137, ¶ 10 ("In an appeal from a justice court established as a court of record, the district court functions as an appellate court and the appeal is confined to a review of the record and questions of law. . . . [B]oth the District Court and this Court review the Justice Court's factual findings

11

for clear error and its legal conclusions for correctness."); *City of Billings v. Costa*, 2006 MT 181, ¶ 7, 333 Mont. 84, ¶ 7, 140 P.3d 1070, ¶ 7 ("As did the District Court, we review a trial court's denial of a suppression motion based on a finding of particularized suspicion to determine whether that finding is clearly erroneous and whether the trial court's conclusions of law are correct.").

¶26    Consequently, a district court's review on an appeal from a lower court of record is no broader than this Court's review of a lower court judgment.  Accordingly, we review the case as if the appeal had originally been filed in this Court.[2]  We examine the record independently of the district court's decision, reviewing the trial court's findings of fact under the clearly erroneous standard, its discretionary rulings for abuse of discretion, and its legal conclusions and mixed questions of law and fact under the de novo standard.  *Solem v. Chilcote*, 274 Mont. 72, 76, 906 P.2d 209, 211-12 (1995); *Jarvenpaa v. Glacier Elec. Co-op., Inc.*, 1998 MT 306, ¶¶ 12-13, 292 Mont. 118, ¶¶ 12-13, 970 P.2d 84, ¶¶ 12-13; *State v. Warclub*, 2005 MT 149, ¶¶ 21, 23, 327 Mont. 352,

_____

[2] This standard, or something closely akin, is also applied by the highest courts of a number of our sister states.  *See*, *e.g.*, *Lakloey, Inc. v. University of Alaska*, 141 P.3d 317, 320 (Alaska 2006) ("When the superior court acts as an intermediate court of appeal, we review its decision de novo."); *Pyle v. Sayers*, 39 S.W.3d 774, 777 (Ark. 2001) ("On a petition for review, this court reviews the case as if the appeal had originally been filed in this court."); *Williams v. Williams*, 444 A.2d 977, 978 (Me. 1982) ("On this appeal, we attach no presumptive validity to the judgment of the Superior Court.  When the Superior Court acts as an intermediate appellate tribunal, we traditionally review directly the initial determination of the adjudicatory body below rather than the decision of the Superior Court."); *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 675 (Pa. 2005) ("[W]ith respect to this Court's review of the Superior Court's discharge of its reviewing function, our standard of review is plenary and non-deferential."); *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, ¶ 9 (Utah 2004) ("We review the court of appeals' decision for correctness, which turns on whether it accurately reviewed the trial court's decision under the appropriate standard of review." (internal quotation marks omitted)).

¶¶ 21, 23, 114 P.3d 254, ¶¶ 21, 23. Our ultimate determination is whether the district court, in its review of the trial court's decision, reached the correct conclusions under the appropriate standards of review.

¶27 In the case at hand, the appropriate standards of review are identified where applicable in the context of the issues discussed below.

## DISCUSSION

¶28 ***1. Does this Court have jurisdiction over Lemire's appeal?***

¶29 As a threshold matter, we must determine whether we have jurisdiction over Lemire's appeal. As explained below, the facts bearing on this issue implicate both this Court's jurisdiction and the District Court's jurisdiction over this case. *Cf. City of Billings v. Costa*, 2006 MT 181, ¶ 9, 333 Mont. 84, ¶ 9, 140 P.3d 1070, ¶ 9 (observing that without a final judgment in the municipal court, both this Court *and* the district court would lack jurisdiction over Costa's appeal). This issue was not raised or briefed by the parties[3]; nevertheless, for the reasons which follow, it is necessary and appropriate that we address it.

¶30 Jurisdiction involves the fundamental power and authority of a court to determine and hear an issue. *State v. Diesen*, 1998 MT 163, ¶ 5, 290 Mont. 55, ¶ 5, 964 P.2d 712, ¶ 5; *see also Peña v. State*, 2004 MT 293, ¶ 21, 323 Mont. 347, ¶ 21, 100 P.3d 154, ¶ 21 (" 'Jurisdiction as applied to courts is the power or capacity given by law to a court to

---

[3] The facts underlying Lemire's argument that the Justice Court erred by awarding attorney fees to the Stanleys *prior* to the expiration of her allotted time for responding to their motion also bear on the jurisdictional question we now address, but neither she nor the Stanleys identify the potential jurisdictional defect explicitly.

13

entertain, hear and determine the particular case or matter.' " (emphasis omitted) (quoting *State ex rel. Johnson v. District Court of Eighteenth Judicial Dist.*, 147 Mont. 263, 267, 410 P.2d 933, 935 (1966))); *Eberhart v. United States*, 546 U.S. 12, ___, 126 S.Ct. 403, 405 (2005) (per curiam) (equating "jurisdictional" with "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority" (internal quotation marks omitted)).

¶31    As such, we stated in *Thompson v. Crow Tribe of Indians*, 1998 MT 161, ¶ 12, 289 Mont. 358, ¶ 12, 962 P.2d 577, ¶ 12, that jurisdictional issues "transcend procedural considerations."  Likewise, we noted in *Corban v. Corban*, 161 Mont. 93, 96, 504 P.2d 985, 987 (1972), that "lack of jurisdiction over the subject matter can be raised at any time and a court which in fact lacks such jurisdiction cannot acquire it even by consent of the parties."  And in *In re Marriage of Lance*, 213 Mont. 182, 186-87, 690 P.2d 979, 981 (1984), we observed that once a court determines that it lacks subject matter jurisdiction, "it can take no further action in the case other than to dismiss it" (citing M. R. Civ. P. 12(h)(3)).  *Accord In re Marriage of Miller*, 259 Mont. 424, 427, 856 P.2d 1378, 1380 (1993).

¶32    Consistent with these principles, we have held in a number of cases that a court may address the question of its jurisdiction *sua sponte*.  *State v. Reeder*, 2004 MT 244, ¶ 4, 323 Mont. 15, ¶ 4, 97 P.3d 1104, ¶ 4 (citing *Losleben v. Oppedahl*, 2004 MT 5, ¶ 25, 319 Mont. 269, ¶ 25, 83 P.3d 1271, ¶ 25, in turn citing *Trombley v. Mann*, 2001 MT 154, ¶ 6, 306 Mont. 80, ¶ 6, 30 P.3d 355, ¶ 6).  Similarly, the United States Supreme Court recently observed that

14

subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived. Moreover, courts, including this Court, have *an independent obligation* to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.

*Arbaugh v. Y & H Corp.*, ___ U.S. ____, ____, 126 S.Ct. 1235, 1244 (emphasis added, citation and internal quotation marks omitted). Accordingly, we will proceed, *sua sponte*, to address the question of our jurisdiction over Lemire's appeal.

¶33 The precise jurisdictional issues before us arise out of the sequence and timing of the Justice Court's entry of judgment vis-à-vis the Stanleys' post-trial motion for attorney fees, and the District Court's order remanding the case to the Justice Court "to hear and decide the reasonable amount of fees and costs to be awarded." With respect to the former, the Stanleys' action against Lemire proceeded to a jury trial on May 12, 2004. That same day, as noted in the facts above, the jury rendered a verdict in favor of the Stanleys on their complaint for possession, but awarded no money damages, and also dismissed Lemire's two remaining counterclaims. The following day (May 13, 2004), the Stanleys filed their motion for attorney fees.

¶34 Pursuant to the Montana Justice and City Court Rules of Civil Procedure (Title 25, Chapter 23, MCA; hereinafter, "M. J. C. C. R. Civ. P.") and the Montana Uniform Rules for the Justice and City Courts (Title 25, Chapter 24, MCA; hereinafter, "M. U. R. J. C. C."),[4] Lemire had a set time period in which to respond to the Stanley's motion. Specifically, M. J. C. C. R. Civ. P. 9B provides that "[a]ny party opposing a

---

[4] Pursuant to M. U. R. J. C. C. 1(a), the Montana Uniform Rules for the Justice and City Courts, "together with" the Montana Justice and City Court Rules of Civil Procedure, govern the practice in all justice and city courts of the State of Montana.

15

motion must do so in writing within 10 days of service." However, M. U. R. J. C. C. 21(b), provides that "[w]hen the period of time prescribed or allowed is ten days or less, intermediate Saturdays, Sundays, and legal holidays shall be excluded." Furthermore, M. J. C. C. R. Civ. P. 6A provides that "the day of the act, event, or default after which the designated period of time begins to run may not be included." Thus, given that the Stanleys' motion was filed on Thursday, May 13, 2004, Lemire had until Thursday, May 27, 2004, to respond thereto.[5]

¶35 Notwithstanding, the Justice Court entered judgment on May 24, 2004—three days prior to the expiration of Lemire's response period.[6] It is not clear whether the court miscalculated the deadline for her response, assumed that Lemire would not be responding to the Stanleys' motion, or concluded that she had implicitly waived such a response by filing her notice of appeal on May 18, 2004. In any event, because the

---

[5] In addition, Lemire cites M. J. C. C. R. Civ. P. 6C for the proposition that she had an additional three days in which to respond to the Stanleys' motion. This provision provides that "[w]henever a party has the right or is required to do an act or take a proceeding within a prescribed period after service of a notice or other paper *and the notice or other paper is served by mail*, 3 days must be added to the prescribed period" (emphasis added). Asserting that the Stanleys' motion for attorney fees was served by mail, Lemire argues that she had 13 days from May 13, 2004—i.e., until June 2, 2004— to respond.

It is not clear on the record before us whether the Stanleys' motion for attorney fees was, in fact, served by mail, since the certificate of mailing attached to the motion is undated and unsigned. However, such a determination is not necessary to resolve the jurisdictional issue before us because, as described below, the Justice Court entered its judgment prior to the expiration of the 10-day period to which Lemire was entitled irrespective of whether the Stanleys served their motion by mail.

[6] Actually, the Justice Court's judgment is stamped as filed on May 23, 2004. However, May 23, 2004, was a Sunday. Thus, because judicial business may not be transacted on Sundays, *see* §§ 3-10-102, 1-1-216(1)(a), and 3-1-302(1), MCA, the judgment is deemed filed on Monday, May 24, 2004.

16

Justice Court entered its judgment while one of the parties still had time under the Rules to respond to a pending motion, we must determine whether, under the jurisdictional provisions set forth below, that judgment is one from which a party may take an appeal.

¶36 Section 3-5-303, MCA (2003) vests the district courts with appellate jurisdiction "in cases arising in justices' courts and other courts of limited jurisdiction in their respective districts as may be prescribed by law and consistent with the constitution." Correspondingly, § 3-10-115(1), MCA, provides that "[a] party may appeal to district court a *judgment* or order from a justice's court established as a court of record" (emphasis added). Title 25, Chapter 33, MCA, in turn, sets forth a number of procedures governing appeals to district courts from justices' courts. Section 25-33-101, MCA, provides that "[a] *judgment* or order in a civil action, except when expressly made final by this code, may be reviewed as prescribed in this chapter and not otherwise" (emphasis added), and § 25-33-102, MCA, provides that "[a]ny party dissatisfied with *the judgment rendered* in a civil action in a . . . justice's court may appeal therefrom to the district court of the county at any time within 30 days after the rendition of the judgment" (emphasis added). Lastly, M. R. Civ. P. 54(a) defines a "judgment" as "the final determination of the rights of the parties in an action or proceeding."

¶37 Here, the judgment rendered by the Justice Court on May 24, 2004, disposed of all pending motions and thus constituted a "final determination of the rights of the parties." However, it was rendered prematurely—before the expiration of Lemire's time to respond to the Stanleys' motion for attorney fees. In this regard, it is necessary to clarify

the difference between a "void" judgment and a judgment which is merely "voidable." As the Sixth Circuit recently observed:

> "Certain procedural irregularities, not amounting to lack of jurisdiction over the person or subject matter, are sometimes characterized as making a judgment 'voidable'. This means that these judgments may be set aside upon a *timely* application in the same proceedings as a matter of judicial discretion."

*Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 907 (6th Cir. 2006) (quoting *Abbott v. Howard*, 451 N.W.2d 597, 599 (Mich.App. 1990)). Consistent with this principle, the court concluded that "disregarding response times set forth in the local civil rules and the Federal Rules of Civil Procedure . . . rendered the instant judgment merely *voidable* as to appellant." *Days Inns Worldwide*, 445 F.3d at 907.

¶38 Likewise, in the case at hand, the Justice Court's entry of judgment on May 24, 2004—though it was entered prematurely and thereby impinged upon Lemire's right to respond to the Stanleys' motion—was at that point merely voidable. Lemire could have filed a timely motion to vacate the judgment and permit her the proper time to respond. Specifically, M. J. C. C. R. Civ. P. 22A provides that "[a] judge may, on such terms as may be just and on the payment of costs, relieve a party from any judgment taken against the party by mistake, inadvertence, surprise, or excusable neglect." However, the Rule further provides that "the application for relief must be made within 30 days after entry of the judgment and upon an affidavit showing good cause for it." Such was not the case here. Rather than filing a motion for relief under M. J. C. C. R. Civ. P. 22A, Lemire instead filed an amended notice of appeal. Notably, she did so on May 25, 2004 (the day after the Justice Court entered judgment), which was still within the ten-day period

18

prescribed by M. J. C. C. R. Civ. P. 9B and 6A and M. U. R. J. C. C. 21(b) for her to respond to the Stanleys' motion for attorney fees.

¶39 This fact distinguishes the case at hand from *State v. Bonamarte*, 2006 MT 291, ___ Mont. ____, ___ P.3d ____, where we determined that the appeal to the district court was premature and that the district court, therefore, lacked jurisdiction to consider it. After a jury found Bonamarte guilty of partner or family member assault, the Bozeman Municipal Court imposed a one-year sentence with all but thirty days suspended and ordered Bonamarte to pay fines and costs. In addition, the court ordered "conditional restitution—Bonamarte would be required to pay restitution only if the State requested it within sixty days and the court held a hearing." *Bonamarte*, ¶ 2. The State made such a request within the sixty-day period; however, by the time it did so, Bonamarte had already filed his notice of appeal. Thus, the municipal court transferred the record to the district court, which purported to affirm the judgment and sentence but remand the issue of restitution " 'for a determination of the total amount to be paid.' " *Bonamarte*, ¶¶ 2, 4-5.

¶40 On Bonamarte's appeal to this Court, we observed that his sentence appeared to be "unresolved" and, therefore, that we needed to address whether we had jurisdiction over the appeal. *Bonamarte*, ¶ 5. Noting that an appeal may be taken by a defendant " 'only from a final judgment of conviction and orders after judgment,' " *Bonamarte*, ¶ 6 (quoting § 46-20-104(1), MCA), and that in order for a judgment and order to constitute a final judgment of conviction, it must impose a "final sentence," *Bonamarte*, ¶ 6, we

19

concluded that no final judgment of conviction yet existed, *Bonamarte*, ¶ 8. We explained as follows:

> The Municipal Court's sentencing order imposed restitution on Bonamarte only if the State requested it within sixty days of the order and the court held a hearing on costs. The State requested restitution within sixty days and noted that Bonamarte could request a hearing. Bonamarte appealed his conviction, however, two days before the State had requested restitution and before the Municipal Court could hold the required hearing. The fact that Bonamarte's sentence was pending at the time of his appeal to the District Court prevented Bonamarte from appealing a "final judgment of conviction" under § 46-20-104, MCA. Thus, Bonamarte's appeal to the District Court was premature, and the District Court had no jurisdiction to consider the appeal.

*Bonamarte*, ¶ 7. Accordingly, we dismissed the appeal without prejudice. *Bonamarte*, ¶ 12.

¶41 The case at hand is a variation on *Bonamarte*. When the Justice Court entered judgment prematurely, Lemire could have filed a motion for relief under M. J. C. C. R. Civ. P. 22A. Thus, her position at that point was analogous to the State's position at the time the conditional restitution order was entered by the municipal court in *Bonamarte*—both parties had the ability, within an allotted period of time, to effect further proceedings in the trial court or allow the judgment already entered to become final by failing to take appropriate action. But unlike the State, which actually filed a timely request for restitution in *Bonamarte*, Lemire, as explained above, filed neither a response to the Stanleys' motion for attorney fees nor a motion for relief from the Justice Court's premature entry of judgment. Rather, her only action in this regard was to amend her notice of appeal. Thus, unlike the situation in *Bonamarte*, nothing in the Justice Court appears to be "unresolved."

20

¶42 Accordingly, because the judgment rendered by the Justice Court disposed of all pending motions and thus constituted a final determination of the rights of the parties, and furthermore because Lemire did not file a timely motion for relief from the judgment alerting the Justice Court to the fact that her right to respond to the Stanleys' motion for attorney fees had been infringed, we therefore conclude that the Justice Court's judgment is an appealable judgment. Concomitantly, we also conclude that the District Court, pursuant to §§ 3-5-303 and 3-10-115(1), MCA, had jurisdiction over Lemire's appeal.

¶43 With respect to this Court's jurisdiction over the appeal, we first note that the source of our jurisdiction is Article VII, Section 2 of the Montana Constitution. Of specific relevance to the issue at hand, Article VII, Section 2(1) vests this Court with appellate jurisdiction and Article VII, Section 2(3) authorizes us to make rules governing appellate procedure. (Such rules of procedure are "subject to disapproval by the legislature in either of the two sessions following promulgation." Mont. Const. art. VII, § 2(3).) Pursuant to this constitutional authority, we have adopted the Montana Rules of Appellate Procedure, which govern appeals to this Court from Montana district courts. *See In re B.P.*, 2000 MT 39, ¶ 15, 298 Mont. 287, ¶ 15, 995 P.2d 982, ¶ 15. In particular, M. R. App. P. 1(b)(1) provides that "[i]n civil cases a party aggrieved may appeal from . . . a final judgment entered in an action or special proceeding commenced in a district court, or brought into a district court from another court or administrative body" (paragraph break omitted).

¶44 The form of the judgment entered by a district court acting as an intermediate appellate court, in turn, is defined by statute. Specifically, a district court reviewing the

21

judgment of a justice's court of record may "affirm, reverse, or amend any appealed order or judgment and may direct the proper order or judgment to be entered or direct that a new trial or further proceeding be had in the court from which the appeal was taken." Section 3-10-115(3), MCA. (The same is true on appeal from a municipal court judgment or order. *See* § 3-6-110(3), MCA.) Furthermore, § 25-33-302, MCA, provides that "[w]hen a judgment is reversed or set aside on a question of law arising in the justice's or city court, the district court must either try the case anew or render a judgment."

¶45 Here, the District Court affirmed the Justice Court's judgment "on all issues . . . except on the issue of fees and costs." With respect to the latter, the court concluded that "a hearing on attorneys fees and costs is appropriate"; therefore, the court ordered that "[t]he case is remanded for the Justice Court to hear and decide the reasonable amount of fees and costs to be awarded and to determine the date when the Plaintiffs may re-take possession." Thus, since the District Court affirmed the Justice Court's judgment in part, reversed the judgment in part, and itself "render[ed] a judgment" "direct[ing] that a . . . further proceeding be had" in the Justice Court, its order on appeal constitutes a "judgment" as contemplated by §§ 3-10-115(3) and 25-33-302, MCA.

¶46 However, as we explained in *B.P.*,

> Rule 1(b)(1), M.R.App.P., expressly provides that an appeal may be taken from a *final* judgment entered in a district court action. A *final* judgment is one which constitutes a final determination of the rights of the parties; any judgment, order or decree leaving matters undetermined is interlocutory in nature and not a final judgment for purposes of appeal.

*B.P.*, ¶ 15 (emphases added). Accordingly, if a judgment which does not constitute a *final* determination of the rights and obligations of the parties in the action or proceeding is nevertheless appealed, both the district court and this Court are without jurisdiction over that appeal. The appellate process folds, no decision on the merits may be issued, and the case returns to the last court which had jurisdiction for that court to enter a final judgment. *See B.P.*, ¶ 15; *City of Billings v. Costa*, 2006 MT 181, ¶ 9, 333 Mont. 84, ¶ 9, 140 P.3d 1070, ¶ 9; *Bonamarte*, ¶¶ 7-12.

¶47 In the case at hand, we must determine what effect, if any, the court's remand order had on the *finality* of its judgment. We recently addressed this same question— though under the applicable *criminal* statutes—in *Costa*. The district court, on Costa's appeal from the Billings Municipal Court, had entered judgment affirming the denial of Costa's motion to suppress and remanding to the municipal court "for 'imposition of sentence.'" *Costa*, ¶ 6. This remand order suggested that the municipal court had not entered a "final judgment," since a judgment in a criminal case is not "final" if sentence has not yet been imposed. *Costa*, ¶ 10. Thus, we observed, the district court's order, combined with Costa's appeal to this Court, raised "jurisdictional issues":

> If the District Court's order containing the remand is not a "final judgment," this Court lacks jurisdiction. *See* Rule 1(d), M.R.App.P.; Section 46-20-104(1), MCA; *Reeder*, ¶ 7 (citations omitted); *State v. Diesen*, 1998 MT 163, ¶¶ 3-4, 290 Mont. 55, ¶¶ 3-4, 964 P.2d 712, ¶¶ 3-4 (citations omitted). By the same token, without a "final judgment"— including sentencing—in the Municipal Court, Costa's appeal to the District Court would have been premature and the District Court—as well as this Court—would lack jurisdiction over the appeal. *See* Rule 5(b)(2), U.M.C.R.App.; § 46-20-104(1), MCA; § 46-1-202(11), MCA; *Diesen*, ¶ 3.

23

*Costa*, ¶ 9.  As it turned out, however, our review of the record disclosed that the municipal court had, in fact, sentenced Costa before she appealed to the district court. *Costa*, ¶ 10.  On this basis, we stated that the district court's order remanding for imposition of sentence was "both unnecessary and a nullity" and had "no effect on the 'final judgment' status" of the municipal court's judgment or the district court's judgment.  *Costa*, ¶¶ 10, 16.  Accordingly, we concluded that the district court had jurisdiction over Costa's appeal to that court, *Costa*, ¶ 10, and that we, likewise, had jurisdiction over Costa's appeal to this Court, *Costa*, ¶ 16.

¶48     Similarly, in the case at hand, we observe that the District Court's remand order was not due to any failure on the Justice Court's part to make "a final determination of the rights of the parties" (unlike the situation we perceived at the outset of *Costa*, where the remand order implied that the municipal court had not yet imposed sentence on Costa, and unlike the situation in *Bonamarte*, where the restitution portion of Bonamarte's sentence in fact had not been resolved at the time of his appeal to the district court).  Indeed, as explained above, the judgment rendered by the Justice Court disposed of all pending motions and thus constituted a final determination of the rights of the parties.  Likewise, the District Court's judgment constituted a final determination of the issues presented to it on appeal; in other words, the court left no matters undetermined.

¶49     As we did in *Costa*, therefore, we conclude that the District Court's remand order had no effect on the appealable status of the Justice Court's judgment or on the "final" status of the District Court's judgment.  Accordingly, pursuant to M. R. App. P. 1(b)(1), this Court has jurisdiction over Lemire's appeal.

24

¶50   ***2. Did the District Court err in its determination that the Justice Court retained subject matter jurisdiction over the Stanleys' action against Lemire after she asserted a claim of title to the subject property?***

¶51   Lemire challenges the District Court's conclusion that the Justice Court had subject matter jurisdiction over Suit #2. She first argues at great length that she in fact holds a life estate in the subject property and that the Justice Court, therefore, "[did] not have subject matter jurisdiction because the controversy involves questions of title to and possession of real property." Yet, not only is this issue not properly before us, given that it was not actually litigated at the trial level, it also is irrelevant. As outlined below, the question we must decide is not whether Lemire, in fact, has a life estate but, rather, whether her assertion of such was procedurally barred and, if *not* barred, whether it deprived the Justice Court of subject matter jurisdiction over the Stanleys' cause of action.

¶52   Jurisdiction is conferred on the courts only by the Constitution or statutes adopted pursuant to the Constitution. *State v. Osborne*, 2005 MT 264, ¶ 12, 329 Mont. 95, ¶ 12, 124 P.3d 1085, ¶ 12 (citing *State ex rel. Johnson v. District Court of Eighteenth Judicial Dist.*, 147 Mont. 263, 266, 410 P.2d 933, 935 (1966)). A court's determination as to its jurisdiction is a conclusion of law, which is reviewed de novo to determine whether the court's interpretation of the law is correct. *In re Marriage of Christian*, 1999 MT 189, ¶ 6, 295 Mont. 352, ¶ 6, 983 P.2d 966, ¶ 6; *Koke v. Little Shell Tribe*, 2003 MT 121, ¶ 7, 315 Mont. 510, ¶ 7, 68 P.3d 814, ¶ 7; *CBM Collections, Inc. v. Ferreira*, 2005 MT 170, ¶ 4, 327 Mont. 479, ¶ 4, 115 P.3d 211, ¶ 4.

25

¶53 Article VII, Section 5(2) of the Montana Constitution states that justice courts shall have such original jurisdiction "as may be provided by law." Thus, it is the Legislature's prerogative, pursuant to this constitutional authority, to provide for the subject matter jurisdiction of the justice courts. *State v. Rensvold*, 2006 MT 146, ¶ 23, 332 Mont. 392, ¶ 23, 139 P.3d 154, ¶ 23. The Legislature has done so in a number of statutes, four of which bear on the issue of whether the Justice Court had subject matter jurisdiction in the case at hand.

¶54 First, § 3-10-302, MCA (2003), provides:

> The justices' courts have concurrent jurisdiction with the district courts within their respective counties in actions of forcible entry and unlawful detainer and *in actions brought under Title 70, chapter 24* [emphasis added].

The Justice Court determined that "this action is an action for possession under § 70-24-427" and that it therefore had jurisdiction pursuant to § 3-10-302. The District Court agreed with this determination, as do we given the grounds for relief stated in the Stanleys' complaint. *See* § 70-24-427(1), MCA (recognizing as a landlord's remedy after termination of a rental agreement "a claim for possession and for rent"—the precise relief requested in the Stanleys' complaint).

¶55 Next, § 25-31-101(1), MCA (2003), which is one of a number of statutes that govern procedure in the justices' courts, provides:

> The parties to an action in a justice's court *cannot give evidence* upon any question which involves the title or possession of real property . . . , nor can any issue presenting such question *be tried* by such court; provided that, in cases of forcible entry and unlawful detainer of which justices' courts have jurisdiction, any evidence otherwise competent may be

26

given, and any question properly involved therein may be determined [emphases added].

¶56 It is evident from this language that the Legislature has determined that questions of title to real property shall not be decided by the justices' courts.[7] Indeed, § 25-31-101(1) explicitly *prohibits* a justice court from even hearing evidence on this subject. Thus, a plaintiff clearly could not file an action in a justice court to quiet title to real property.

¶57 Probably for this reason, Lemire now argues (contrary to her original theory) that the Stanleys' action was *not* brought under Title 70, Chapter 24, MCA, but, rather, was an action to quiet title:

> The "Rental Contract", despite its denomination, conveys a life estate in the Life Tenant [Lemire]. Therefore, Grantors' [the Stanleys'] action should have been brought as one for quiet title pursuant to Mont. Code Ann. § 70-28-101 et. seq.

The District Court, however, observed that the Stanleys had "pled that there was a rental agreement, that the agreement was breached and how the agreement was breached"—an

---

[7] The historical basis for limiting the jurisdiction of the justices' courts on such questions has been explained as follows:

> Historically, the essential reason for excluding from the jurisdiction of the justice of the peace cases concerning real estate was that the justice of the peace was not learned in the law, and was not, therefore, competent to deal with questions of title often of difficult and intricate nature. Also, the court of the justice of the peace was not a court of record. . . . The obvious purpose of the statute setting up the municipal court and defining its jurisdiction is that of providing a tribunal for the speedy disposition of a large number of small causes. And the trial of cases involving an issue as to title, with attendant difficult and complicated questions of real property law, would act as a clog upon the calendar of the court.

*Schwartz v. Murphy*, 112 F.2d 24, 28 (D.C. Cir. 1940) (citations omitted); *accord Stephens v. Hammersley*, 550 P.2d 1268, 1270 (Alaska 1976).

assessment of the record with which we agree. Indeed, during the early stages of the Justice Court proceedings, as the District Court aptly noted, "[Lemire] went out of her way to stress that landlord/tenant law did apply [to her situation with the Stanleys]." Given these considerations, we reject her current characterization of the Stanleys' cause of action as one to quiet title. To the contrary, the Stanleys' pleadings establish that their action was brought under § 70-24-427, MCA, and the Justice Court, therefore, had subject matter jurisdiction over this case at its outset.

¶58 Lemire points out that "lack of subject matter jurisdiction may be raised by motion or *sua sponte* at any time" (citing M. R. Civ. P. 12(h)(3)). Presumably, this is meant to suggest that her assertion of an ownership interest in the subject property divested the Justice Court of its jurisdiction over the case. However, while the question of a court's subject matter jurisdiction may indeed be raised at any time, Lemire's argument overlooks an antecedent issue. The Justice Court acknowledged that Lemire's assertion of title to the subject property could have divested it of jurisdiction, *had she raised the issue in a proper and timely manner*; however, because she did not do so, the court determined that the action before it did not involve a question of title. The District Court reached the same conclusion. The pertinent question, therefore, is whether the Justice Court and the District Court correctly determined that the jurisdictional and procedural statutes applicable to justices' courts mandate that a question of title to property be raised at a particular time or be deemed waived.

¶59 Determinative of this question are §§ 3-10-301(1)(b) and 25-31-102(1), MCA (2003). The former provides that the justices' courts have civil jurisdiction:

28

> in actions for damages not exceeding $7,000, exclusive of court costs, . . . for injury to real property when no issue is *raised by the verified answer of the defendant* involving the title to or possession of the real property.

Section 3-10-301(1)(b), MCA (emphasis added).  Likewise, the latter statute provides, in relevant part:

> If it appears *from the answer of the defendant*, verified by his oath, that the determination of the action will *necessarily involve* the question of title or possession to real property . . . , the justice *must* suspend all further proceedings in the action and certify the pleadings and, if any of the pleadings are oral, a transcript of the same from his docket to the clerk of the district court of the county. . . .  When the action is certified to the district court, *upon the answer of the defendant*, he must file an undertaking, to be approved by the justice, to the effect that he will pay all costs that may be awarded against him on the trial in the district court.

Section 25-31-102(1), MCA (emphases added).

¶60    Based on these provisions, the District Court reasoned that "the Justice Court had subject matter jurisdiction over this case because Lemire failed to raise her claim of a dispute over an estate in real property in a timely fashion."  From this, it appears that the District Court—like the Justice Court—deemed Lemire's question of title waived for purposes of Suit #2.  We agree.

¶61    Sections 3-10-301(1)(b) and 25-31-102(1) require a defendant to raise a question of title to real property in her answer.  To be sure, neither of these statutes explicitly threaten waiver if a defendant fails to do so; nevertheless, the statutory scheme suggests that waiver is indeed the result of such an omission.  Unlike §§ 3-10-301(1)(b) and 25-31-102(1), which refer to the defendant's "answer," § 25-31-102(2) states:

> If it appears *at any point in the proceedings* in a justice's court that the determination of the action will involve the question of the state's

liability to make a payment of money, the justice shall sever that issue and dismiss the action as to it. If the issue is not severable, the justice shall dismiss the entire action.[8] [Emphasis added.]

¶62 The difference between subsections (1) and (2) of § 25-31-102 is informative and shows an intent to treat the two issues addressed therein differently. The former refers to "the answer of the defendant," whereas the latter refers to "any point in the proceedings." Certainly, if the Legislature intended that a defendant be able to raise a question of title to real property "at any point in the proceedings in a justice's court," it could have—and would have—said so, as it did for questions of the state's liability to make a payment of money. Instead, the Legislature referred to a defendant's "answer" as the time for ascertaining whether the determination of the action in the justice court will necessarily involve the question of title to or possession of real property.[9]

---

[8] Section 25-31-102(2) implements § 3-10-301(2), which provides that "[j]ustices' courts do not have jurisdiction in civil actions that might result in a judgment against the state for the payment of money."

[9] Focusing exclusively on the defendant's answer may result in unintended consequences, since the justices' courts may not always be able to determine whether an action necessarily involves a question of title to real property from this document. Certainly there are cases in which a genuine dispute as to title is latent at this early stage of the proceedings and only develops or becomes apparent as the case progresses. Likewise, there are cases in which it appears from the defendant's answer that the determination of the action necessarily involves a question of title, but such question ultimately turns out not to be determinative. Under the statutory scheme, therefore, some cases will be dismissed, though there is no genuine issue as to title, simply because it appears from the defendant's answer that there is. Conversely, there will be cases in which the court will retain jurisdiction—no issue as to title appearing in the defendant's answer—only to discover further down the road that such an issue is necessarily involved after all. *See Schwartz v. Murphy*, 112 F.2d 24, 28-29 (D.C. Cir. 1940) (discussing the pitfalls of "the declaration test" vis-à-vis "the issue test"). That said, the statutory scheme is what it is, and failure to raise a question of title to real property in the defendant's answer constitutes a waiver of that question for purposes of the instant justice court proceedings.

¶63 Accordingly, we conclude that Lemire's question of title—i.e., her claim of a life estate in the subject property—had to be raised in her answer (or in her timely amended answer) and that if she failed to do so, the question was waived for purposes of Suit #2.

¶64 In this regard, Lemire insists that she "preserved the issue of the nature of her interest in the premises" by alerting the Justice Court in a number of motions to its lack of subject matter jurisdiction and by means of factual allegations in her motion to dismiss, her answer, and other motions. As to the former, she points out that in her motion to dismiss she "advis[ed] the court 'that Ms. Lemire's lease is for life' " and that in her reply supporting said motion she "advised the Justice Court again that 'the Plaintiffs granted Ms. Lemire a lease for the remainder of her life.' " She implies that these references were sufficient to notify the court that a question of title to the subject property was necessarily involved in the parties' dispute. As to the factual allegations, she asserts that "[u]nder Mont. Code Ann. § 25-31-102, it suffices if subject matter jurisdiction appears to be lacking from the facts stated" and that "[e]ven if the facts underlying her challenge of subject matter jurisdiction have not been artfully pled, those facts, including the instrument governing the parties' relationship, were brought to the Courts' attention."

¶65 Presented with similar arguments, the District Court concluded that Lemire did *not* raise the question of title to the subject property in her answer or amended answer. After reviewing these documents, the court stated as follows:

> [T]he Court fails to see where Lemire claimed an interest in the premises beyond that of a tenant. In her brief supporting her motion to dismiss, she clearly states that "[t]he law of unlawful detainer, however, is not

applicable in this case because Ms. Lemire's lease is a residential lease government (sic) by Title 70 Chapter 24 of the Montana Code Annotated, and because Ms. Lemire's lease is a lease for life." [Citation.] In her answers, she simply describes the term of the lease as one for life, not a life estate. [Second alteration in original.]

¶66 We agree with the District Court's assessment and, thus, reject Lemire's wholly unrealistic characterizations of her motion to dismiss, answer, and amended answer. Given that she argued throughout the early stages of the Justice Court proceedings that the Stanleys' cause of action was governed by landlord-tenant law, the District Court properly rejected her later claim that her use of the terms "leasehold estate" and "lease for life" in her motion to dismiss, answer, and amended answer should have "alert[ed]" the court to a question of title.

¶67 Thus, in summation, the Justice Court had subject matter jurisdiction over the Stanleys' cause of action at the outset of the proceedings. Lemire's claim of title to the subject property would have divested the court of jurisdiction had she timely asserted it. However, §§ 3-10-301(1)(b) and 25-31-102(1), MCA (2003), require that a question of title to or possession of real property be raised in the defendant's answer or be deemed waived. Lemire failed to do so. Thus, the District Court's conclusion that she waived the issue was correct, and we therefore affirm the court on this issue.[10]

¶68 ***3. Did the District Court err in affirming the Justice Court's determination that the Stanleys were entitled to an award of attorney fees?***

¶69 The Justice Court awarded the Stanleys attorney fees in the amount of $2,594.25 and costs of $60.00. On her appeal to the District Court, Lemire challenged this award

---

[10] This conclusion moots the Stanleys' discussion of whether res judicata barred Lemire from pursuing the question of title to the subject property in Suit #2.

32

on three grounds: first, the jury had been instructed that under Title 70, Chapter 24, MCA, it could award reasonable attorney fees to the prevailing party, but it did not do so; second, because the jury did not award the Stanleys any monetary damages (namely, the $40.00 in unpaid rent), they were not a "prevailing party"; and third, the Justice Court ruled on the Stanleys' motion for attorney fees before Lemire's allotted time to respond to the motion had lapsed and without conducting a hearing. She also disputed the Stanleys' contention that a party's right to an award of attorney fees is a question of law for the court and not a question of fact for the jury.

¶70 The District Court agreed with the Stanleys that the decision to award attorney fees is the province of the judge, not the jury. However, the court determined that a hearing on attorney fees and costs "is appropriate." (The basis for this determination is not stated explicitly in the court's order, but it appears to derive from the court's immediately preceding observation: "Lemire argues that the Justice Court ruled on fees and costs before her time to object expired.") Accordingly, the court ordered that "[t]he case is remanded for the Justice Court to hear and decide the reasonable amount of fees and costs to be awarded."

¶71 On appeal to this Court, Lemire asserts that the District Court erred in affirming the Justice Court's determination that the Stanleys were entitled to an award of attorney fees. In support of this position, she reiterates essentially the same contentions she advanced in the District Court: first, even if the award of attorney fees is a question of law, "the [Stanleys] did not fully recover the relief sought, and are therefore not the prevailing party"; and second, "before [Lemire's] response time had lapsed, the Justice

33

Court granted [the Stanleys'] Motion and awarded attorney fees . . . without gathering further evidence or conducting a hearing, based on unverified, unsigned invoices of [the Stanleys'] counsel."

¶72 The general rule in Montana is that absent a statutory or contractual provision, attorney fees are not recoverable. *National Cas. Co. v. American Bankers*, 2001 MT 28, ¶ 27, 304 Mont. 163, ¶ 27, 19 P.3d 223, ¶ 27; *accord Hoven v. Amrine*, 224 Mont. 15, 17, 727 P.2d 533, 534 (1986) ("Attorney fees are allowed when they are provided for by statute or contractual provision."). Here, an award of attorney fees was authorized by statute—specifically, § 70-24-442(1), MCA, which provides as follows:

> In an action on a rental agreement or arising under this chapter, reasonable attorney fees, together with costs and necessary disbursements, may be awarded to the prevailing party notwithstanding an agreement to the contrary.

¶73 By virtue of the word "may," an award of attorney fees pursuant to this statute is discretionary. We review discretionary rulings for abuse of discretion. *National Cas. Co.*, ¶ 27. However, the preliminary issue of whether or not a party is *entitled* to recover attorney fees under the relevant statutory or contractual provision is strictly a question of law. Thus, we review a lower court's conclusions of law pertaining to the recovery of attorney fees to determine whether those conclusions are correct. *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 14, 331 Mont. 421, ¶ 14, 133 P.3d 190, ¶ 14; *accord National Cas. Co.*, ¶ 27 ("[A] district court's underlying determination that legal authority exists for an award of attorney fees is a conclusion of law which we review to determine whether the court interpreted the law correctly.").

¶74 As noted above, § 70-24-442(1) authorizes an award of "reasonable" attorney fees to the "prevailing party." Subsection (2), in turn, clarifies that "[a]s used in this section, 'prevailing party' means the party in whose favor final judgment is rendered." Section 70-24-442(2), MCA. Thus, it is necessary to determine whether the Stanleys were the "prevailing party" and whether the award was "reasonable," as contemplated by the statute.

¶75 With respect to reasonableness, we have stated that "for attorney fees to be awarded by a trial court, there must be some type of proof of amount and reasonableness introduced into the record by counsel." *In re Marriage of Mease*, 2004 MT 59, ¶ 58, 320 Mont. 229, ¶ 58, 92 P.3d 1148, ¶ 58. Apparently because the Justice Court had ruled on the Stanleys' motion for attorney fees before Lemire's time to respond had expired, the District Court remanded the case precisely for the purpose of "hear[ing] and decid[ing] the reasonable amount of fees and costs to be awarded." However, while this disposition was otherwise correct under our case law, we conclude that the District Court erred in affirming the Justice Court's determination that the Stanleys were *entitled* to an award of attorney fees in the first place; thus, a remand to that court for a hearing on reasonableness is unnecessary.

¶76 As the plain language of § 70-24-442(2) makes clear, the "prevailing party" for purposes of an award of reasonable attorney fees under the Residential Landlord and Tenant Act is "the party in whose favor final judgment is rendered." In the case at hand, the jury's verdict form and the Justice Court's judgment reflect that the jury found in favor of the Stanleys on their complaint for possession and on Lemire's counterclaims for

breach of agreement and breach of the covenant of good faith and fair dealing. However, the Stanleys' complaint also sought "damages for lost rent," and the jury found in favor of Lemire on this claim, awarding "the amount of $0." Thus, as Lemire maintains, there is no one "party in whose favor final judgment [was] rendered" in the case at hand. Or, stated alternatively, the Stanleys and Lemire both had separate final judgments rendered in their favor, though on different claims for relief set forth in the Stanleys' complaint.

¶77 Accordingly, because each party prevailed on different issues, neither party was entitled to an award of attorney fees under § 70-24-442, MCA. *See Winters v. Winters*, 2004 MT 82, ¶ 59, 320 Mont. 459, ¶ 59, 87 P.3d 1005, ¶ 59 (observing that a contractual provision awarding attorney fees to the prevailing party is not effective when each party prevailed on different issues (citing *In re Marriage of Pfennigs*, 1999 MT 250, ¶ 42, 296 Mont. 242, ¶ 42, 989 P.2d 327, ¶ 42)); *cf. Empire Development Co. v. Johnson*, 236 Mont. 433, 441, 770 P.2d 525, 530 (1989) ("[W]here the parties have mutually breached the same contract, the District Court did not err by refusing to grant either party attorney fees."). We therefore reverse the District Court on this issue.

## CONCLUSION

¶78 The judgment rendered by the Justice Court was an appealable judgment as contemplated by § 3-10-115(1), MCA, and the District Court, therefore, had jurisdiction over Lemire's appeal. Likewise, the District Court's judgment constituted a final determination of the issues presented to it on appeal, leaving no matters undetermined, and this Court, therefore, has jurisdiction over this case pursuant to M. R. App. P. 1(b)(1).

¶79 The District Court correctly affirmed the Justice Court's determinations that it initially had subject matter jurisdiction over the parties' dispute and that it was not divested of jurisdiction by virtue of Lemire's belated claim of title to the subject property. Pursuant to §§ 3-10-301(1)(b) and 25-31-102(1), MCA (2003), Lemire waived this issue for purposes of the Justice Court proceedings in Suit #2.

¶80 The District Court, however, erred in affirming the Justice Court's determination that the Stanleys were entitled to an award of attorney fees. Because both the Stanleys and Lemire were "prevailing part[ies]" in Suit #2, the Stanleys were not entitled to such an award.

¶81 Affirmed in part and reversed in part.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER